**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLINT PHILLIPS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-cv-00825-JSD |
| | ) | |
| OFFICER UNKNOWN ROSE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>OPINION, MEMORANDUM AND ORDER</u>**

This matter comes before the Court on review of the civil rights complaint filed by plaintiff Clint Phillips, III. For the reasons discussed below, the Court will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Plaintiff has been granted leave to proceed in forma pauperis. (Docket No. 7). Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted.

To avoid dismissal, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820

F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant and frequent filer of lawsuits in this Court.[1] He brings this civil action pursuant to 42 U.S.C. § 1983, naming Wal-Mart, Officer Rice, Officer Weber, First Community Credit Union, and the City of Florissant as defendants. (Docket No. 1 at 6). Officers Rice and Weber are sued in both their individual and official capacities. The complaint contains allegations that plaintiff was wrongfully arrested.

---

[1] Since 2010, plaintiff has filed thirty-nine cases that have been closed, many of them dismissed on initial review. Three other cases remain pending.

In the "Statement of Claim," plaintiff asserts that on March 30 or March 31, 2023, he was "initially harassed by First Community's branch manager," located inside Wal-Mart. (Docket No. 1 at 6). Plaintiff does not explain this harassment, other than to say that the manager "was attempting to give [him] directions as if [he] were one of his employees and [he] was obligated to follow them," which he insists he is not. He alleges that the manager's actions were "false imprisonment," because the "manager instigated, promoted, countenanced, encouraged, and directed through [the] phone, and in their presence[,] Officer Weber's and Officer Rice's false arrest, false imprisonment, slander, libel, deceit, unreasonable arrest, abuse of discretion, abuse of process…and illegal detention." (Docket No. 1 at 6-7). Apparently, plaintiff is upset because the manager "told police" that he was "trespassing." (Docket No. 1 at 7). He contends that he was arrested without probable cause, and that his arrest was "directed" by First Community and Wal-Mart.

With regard to Officer Rice, plaintiff asserts that Rice "had the duty to prevent the misconduct of the white male officer by the name of Weber, but did not." He states that Officer Rice "witnessed Officer Weber[']s technical assault, false arrest, false imprisonment, slander, illegal detention with no objective reasonable suspicion, 4th Amend violation, 14th Amend violation, 5th Amend violation, [and] excessive force." Plaintiff contends that "Officer Weber's intentional torts only fell short of an illegal transport to a penal institution."

During this incident, plaintiff admits that he "slightly resisted" arrest, determining that it was "illegal." (Docket No. 1 at 8). He notes that handcuffs were placed on him too tightly, though he acknowledges the "damage was de-minimus." According to plaintiff, he has the right to resist "an illegal arrest by a police officer for something/a misdemeanor that he/she did not see," and was not "committed in his presence."

3

Plaintiff alleges that Wal-Mart, First Community, and Officers Rice and Weber in both their official and individual capacities, all "had a joint understanding and meeting of the minds to prevent [him] from returning to First Community or Wal-Mart without reasonable grounds, suspicion, or probable cause." He argues that neither police officer should be given qualified immunity, and that both Wal-Mart and First Community are "liable under a respondeat superior theory."

Plaintiff goes on to explain that an arrest violates the Fourth and Fourteenth Amendments "when it is done without probable cause to believe a crime was [committed] or at least a frisk alone with reasonable suspicion." (Docket No. 1 at 9). He further states that "reasonable suspicion…only justifies a search of [his] outer clothing, and intrusions are not justified unless an officer locates contraband, [and is] not to be used as an excuse to search [his] personal effects," such as "lottery tickets, cash, coins, and personal papers." Plaintiff also asserts that he has a right to be free from excessive force, and that any arrest in reprisal for his exercise of free speech and expression violates the First Amendment. He suggests that his arrest was the result of "retaliatory animus," and claims that the officers made "false accusations" that he had committed the crime of misdemeanor trespassing. (Docket No. 1 at 9-10).

As to the City of Florissant, plaintiff states that it "is liable because their officers were the tortfeasor[s], and these multiple intentional torts were committed by both Officer Weber and Officer Rice in their official capacities." (Docket No. 1 at 10). He asserts that he "was handcuffed, thrown in a police officer conveyance, threatened, [and] interrogated without being read [his] *Miranda* rights." He argues that this demonstrates "some type of unofficial custom or policy of the City of Florissant," and that if it is not a policy, "it is so widely practiced…that it has the force of

policy and should be considered as such." Thus, plaintiff claims that Florissant should be "vicariously liable for the unofficial customs created by their officers." (Docket No. 1 at 11).

The "Statement of Claim" concludes with plaintiff's assertion that "principals are liable for the acts of their agents under a respondeat superior theory," and that "Wal-Mart and First Community abused process and caused the police to abuse their discretion by using them as an instrumentality to have [him] arrested" for trespassing.

Despite presenting these claims, plaintiff does not indicate that he suffered an injury, and does not specify what relief he is seeking.

## Discussion

Plaintiff is a self-represented litigant who has filed a civil action pursuant to 42 U.S.C. § 1983, alleging that defendants falsely arrested him. The Court has previously granted his motion for leave to proceed in forma pauperis. Because plaintiff is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A.  42 U.S.C. § 1983 Claim Against City of Florissant

Plaintiff has named the City of Florissant as a defendant. A local governing body such as Florissant can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional

5

policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which a plaintiff can potentially assert a municipal liability claim.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, a plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8ᵗʰ Cir. 2013).

Finally, a plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8ᵗʰ Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8ᵗʰ Cir. 2017). As with an unconstitutional custom, a "failure to train or supervise must be the moving force behind the constitutional violation." *See Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184, 1189 (8ᵗʰ Cir. 2019).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8ᵗʰ Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8ᵗʰ Cir. 2003). In this case, plaintiff has not presented any facts to support the proposition that the City of Florissant harmed him due to an unconstitutional policy, custom, or failure to train.

First, with regard to policy, plaintiff points to no "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [City of Florissant's] governing body" as being at issue in this case. Certainly, there are no facts suggesting that plaintiff's arrest was the result of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." That is to say, there is no indication whatsoever

7

that a Florissant official made a deliberate choice to direct plaintiff's arrest. To the contrary, plaintiff's facts – as opposed to his numerous legal conclusions – suggest that he was arrested by two police officers for trespassing. Furthermore, plaintiff's facts describe only a single occurrence. The Court cannot infer the existence of an unconstitutional policy based on just one instance. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991). Plaintiff's naked assertion about an unconstitutional Florissant policy is nothing more than an unsupported legal conclusion, which the Court declines to accept as true. *See Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (explaining that a court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts").

Second, as to an unconstitutional custom, plaintiff has not demonstrated the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" City of Florissant employees, much less that Florissant policymakers were deliberately indifferent to or tacitly authorized such misconduct. To be sure, plaintiff says that Florissant has "unofficial customs." He does not, however, provide any facts to undergird this legal conclusion. *See Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010) (explaining that "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice"). In particular, plaintiff's facts – such as they are – concern only a single instance in which plaintiff was arrested in March 2023. A single occurrence does not establish a pattern. *See Wedemeier*, 931 F.2d at 26.

Likewise, plaintiff has not shown a deliberately indifferent failure to train or supervise on the part of the City of Florissant. To show deliberate indifference, plaintiff must prove that the City of Florissant "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Such notice is typically alleged by facts demonstrating a "pattern of

similar constitutional violations by untrained employees." As already discussed, plaintiff's facts do not establish any sort of pattern, but focus on only a single event in which plaintiff was arrested. Indeed, as discussed below, plaintiff's facts fail to describe any constitutional violations whatsoever, let alone a pattern of them.

Finally, plaintiff proposes that the City of Florissant is liable because it employed Officer Rice and Officer Weber. To the extent he is advancing a respondeat superior theory, the claim fails, because a municipality cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a municipality…cannot be liable on a respondeat superior theory"). *See also Andrews v. Fowler*, 93 F.3d 1069, 1074 (8th Cir. 1996) ("A local government may not be sued under [42 U.S.C.] § 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior").

For all of these reasons, plaintiff has failed to state a municipal liability claim against the City of Florissant. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, the claim must be dismissed.

## B.  42 U.S.C. § 1983 Claim Against Wal-Mart and First Community

Plaintiff has also sued Wal-Mart and First Community, two private companies. The claims against them fail for two reasons.

### i.      Wal-Mart and First Community Did Not Act Under Color of Law

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v.*

*Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). With regard to the first element, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under 42 U.S.C. § 1983. *Crumpley-Patterson*, 388 F.3d at 590. However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

In this case, neither Wal-Mart or First Community is a state actor. Rather, both are alleged to be private companies. Nevertheless, plaintiff asserts that they "had a joint understanding and meeting of the minds to prevent [him] from returning to First Community or Wal-Mart." To state a claim, however, plaintiff must do more than simply set forth the elements of a cause of action. *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) ("A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). Despite his conclusion, plaintiff offers no facts to show that Officer

Rice and Officer Weber had "a mutual understanding, or a meeting of the minds" with Wal-Mart and First Community. For example, there are no facts establishing when this "meeting" took place, and what "understanding" was reached. Moreover, there is not a single fact showing that Wal-Mart and First Community exercised "power possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law." *See Magee*, 747 F.3d at 535.

The only facts presented to support the proposition that Wal-Mart and First Community acted under color of state law consists of plaintiff's contention that an employee contacted the police. Calling the police is not the exercise of a "power possessed by virtue of state law." In other words, "a private party's mere invocation of state legal procedures" does not constitute "joint participation or conspiracy with state officials satisfying the [42 U.S.C.] § 1983 requirement of action under color of law." *See Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997) ("To impose § 1983 liability on a private actor for merely answering a law enforcement official's questions regarding a case would have obvious and unfortunate consequences and has no support in precedent or common sense"). *See also Engel v. Engel*, 2022 WL 2208875, at *3 (D. S.D. 2022) (noting that "the summoning of police officers or the provision of information to police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of Section 1983").

For these reasons, plaintiff has not adequately demonstrated that Wal-Mart and First Community acted under color of law. Because he has not done this, he is missing an essential element of a 42 U.S.C. § 1983 claim. Therefore, the claims against Wal-Mart and First Community must be dismissed.

ii.     **No Allegations that Wal-Mart and First Community Violated Plaintiff's Rights**

Even if plaintiff had shown that Wal-Mart and First Community acted under color of law – which he has not – he has still failed to demonstrate their liability under 42 U.S.C. § 1983. To support a claim against a corporation acting under color of state law, plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders*, 984 F.2d at 975 (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"); and *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").

In this case, plaintiff makes no allegations whatsoever to the effect that Wal-Mart and First Community inflicted a constitutional injury actionable under 42 U.S.C. § 1983 due to a policy, custom, or official action. Instead, he asserts that Wal-Mart and First Community are liable "under a respondeat superior theory." However, "[a] corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Therefore, for this reason as well, plaintiff's claims against Wal-Mart and First Community must be dismissed.

**C. Official Capacity Claims Against Officers Rice and Weber Under 42 U.S.C. § 1983**

Plaintiff has sued Officers Rice and Weber in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or

12

her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly*, 813 F.3d at 1075 (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, Officer Rice and Officer Weber appear to be police officers for the City of Florissant. As such, the official capacity claims against them are actually against the city itself, their employer. In the discussion set forth above, the Court has already determined that plaintiff has failed to state a claim against the City of Florissant under 42 U.S.C. § 1983. Therefore, the official capacity claims against Officers Rice and Weber – treated as being made against Florissant – must likewise be dismissed.

**D.  Individual Capacity Claims Against Officers Rice and Weber Under 42 U.S.C. § 1983**

Plaintiff has also sued Officer Rice and Officer Weber in their individual capacities. Liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged

deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has drawn no connection between defendants Rice and Weber and the violation of his constitutional rights. That is to say, there is no indication in the complaint as to what they actually did or did not do to harm him. Instead of facts, plaintiff has presented only a string of legal conclusions. For instance, Officer Weber is accused of "technical assault, false arrest, false imprisonment, slander, illegal detention with no objective reasonable suspicion," as well as excessive force and violations of the Fourth, Fifth, and Fourteenth Amendments. As to Officer Rice, she is merely alleged to have failed to prevent the above-mentioned acts.

This conclusory pleading fails to forge the necessary causal connection to assert 42 U.S.C. § 1983 liability against Officer Rice and Officer Weber. *See Love v. Schoffman*, 142 Fed. Appx. 278, 279 (8th Cir. 2003) (affirming pre-service dismissal under 28 U.S.C. § 1915 because the complaint, among other infirmities, "did not specify which of the many named defendants was responsible for each of the alleged harms"). Moreover, the Court notes that while factual allegations must be accepted as true, unsupported legal conclusions may properly be set aside. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (explaining that while "the court must take the plaintiff's factual allegations as true," this "tenet does not apply…to legal conclusions or formulaic recitations of the elements of a cause of action," and "such allegations may properly be set aside").

Beyond a failure to demonstrate the personal responsibility of Officer Rice and Officer Weber, plaintiff has also neglected to present any facts to sustain the numerous causes of action he has listed.

i.     **False Arrest**

At several points in the "Statement of Claim," plaintiff asserts that he was falsely or illegally arrested. "Under the Fourth Amendment, a person has a right to be secure in his person and warrants may not issue but upon probable cause." *Ross v. City of Jackson, Mo.*, 897 F.3d 916, 920 (8th Cir. 2018). "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013). However, a false arrest claim under 42 U.S.C. § 1983 "fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001).

Probable cause exists where there are facts and circumstances within a law enforcement officer's knowledge that are sufficient to lead a person of reasonable caution to believe that a suspect has committed or is committing a crime. *Galarnyk v. Fraser*, 687 F.3d 1070, 1074 (8th Cir. 2012). *See also Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) ("An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense"). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010).

Probable cause can still exist even when an officer mistakenly arrests a suspect, as long as the mistake is objectively reasonable. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). Similarly, the fact that a suspect arrested by law enforcement is later found innocent is not material. *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976). Nonetheless, the substantial latitude given to law enforcement officers is "not without limits," and an officer "is not free to disregard plainly

exculpatory evidence." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). Furthermore, "probable cause does not exist when a minimal further investigation would have exonerated the suspect." *Id*.

In this case, plaintiff asserts that he was arrested "without probable cause or any reasonable grounds." The problem, though, is that he provides no facts from which the Court can draw the inference that this is true. That is, plaintiff's allegations do not explain what he means when he states that probable cause was lacking, and his arrest illegal. To the contrary, plaintiff's own facts indicate that he entered a Wal-Mart, that a First Community branch manager told him he could not go someplace, and plaintiff asserted his belief that he had no obligation to follow the branch manager's directions. At that point, the police were called, and plaintiff accused of trespassing. Far from demonstrating a lack of probable cause, the "Statement of Claim" suggests that responding officers did have a reason to believe that a crime had been committed. Therefore, plaintiff has not stated a false arrest claim.

### ii.    Illegal Search

Plaintiff asserts that his "personal effects" were improperly searched without reasonable suspicion, in violation of the Fourth and Fourteenth Amendments. The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Despite the Fourth Amendment's general prohibition against unreasonable searches, a warrantless search may be valid if conducted pursuant to probable cause or voluntary consent. *Waters v. Madson*, 921 F.3d 725, 740 (8th Cir. 2019).

Here, as with his claim of an illegal arrest, plaintiff's facts fail to demonstrate that Officer Rice and Officer Weber lacked probable cause to search him. For example, he does not show that the officers were not simply performing a proper pat-down search for weapons. *See United States v. Stokes*, 62 F.4[th] 1104, 1108 (8th Cir. 2023) ("Once a suspect is legally stopped, an officer who

16

has reason to believe the detained individual may be armed and dangerous may conduct a pat-down search for weapons to ensure officer safety"). To the contrary, as previously noted, plaintiff's facts actually indicate that the police were called for a trespassing complaint, and that plaintiff admitted that he "slightly resisted" arrest. Furthermore, given that plaintiff has not demonstrated the illegality of his arrest, he has also failed to show that any search of his person was not an appropriate search incident to arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) (explaining that if an arrest is lawful, "a search incident to arrest requires no additional justification," as "the fact of the lawful arrest…establishes the authority to search").

In order to state a plausible claim for an unlawful search, plaintiff must present at least some facts from which the Court can infer that the search was unreasonable. In this case, plaintiff presents only a legal conclusion, without any corresponding factual support. Therefore, plaintiff has not stated an unlawful search claim.

### iii.    Excessive Force

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) ("The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person"); and *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under 42 U.S.C. § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018).

"[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135-36 (8th Cir. 2019). To that end, law enforcement officers undoubtedly have a right to use some degree of physical force, or threat of physical force, to effect a lawful seizure. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). "A de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minimis use of force." *Robinson*, 937 F.3d at 1136.

In this case, plaintiff accuses Officer Rice and Officer Weber of excessive force. More specifically, he states that "cuffs were attached to [his] arms very tightly[,] piercing the skin." This is not sufficient to state a claim. "Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied." *Chambers*, 641 F.3d at 907. To show that the use of handcuffs amounted to excessive force, "a plaintiff must demonstrate something more." *Id*.

Here, plaintiff has not shown that the use of handcuffs amounted to excessive force. While he asserts that the cuffs were attached "very tightly," he acknowledges that the "damage was de-minimus." There are no other facts presented from which the Court can infer that this use of force

18

was unreasonable. For example, there is no indication that the handcuffs were left on his wrists for an excessive period of time, that they were applied improperly, or that force was used against him while in handcuffs. Therefore, plaintiff has not stated an excessive force claim.

### iv.   Miranda Warning

Plaintiff asserts that he was "interrogated without being read [his] *Miranda* rights." Pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), "certain warnings must be given before a suspect's statement made during custodial interrogation [can] be admitted into evidence." *Dickerson v. United States*, 530 U.S. 428, 431-32 (2000). The *Miranda* rule is a prophylactic measure that is employed to protect against the violation of the Self-Incrimination Clause. *See United States v. Patane*, 542 U.S. 630, 636 (2004) (plurality opinion). The rule's purpose is to prevent "the admission into evidence in a criminal case of confessions obtained through coercive custodial questioning." *Chavez v. Martinez*, 538 U.S. 760, 772 (2003).

"Rules designed to safeguard a constitutional right, however, do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person." *Id*. As such, law enforcement's failure to read the *Miranda* warnings to a suspect does not violate the suspect's constitutional rights and cannot be grounds for a 42 U.S.C. § 1983 action. *Id. See also Vega v. Tekoh*, 142 S.Ct. 2095, 2106 (2022) (explaining that "a violation of *Miranda* does not necessarily constitute a violation of the Constitution, and therefore such a violation does not constitute the deprivation of a right secured by the Constitution," and is not actionable under 42 U.S.C. § 1983); and *Hannon v. Sanner*, 441 F.3d 635, 636 (8th Cir. 2006) (agreeing "with the district court that a litigant cannot maintain an action under [42 U.S.C.] § 1983 based on a violation of the *Miranda* safeguards").

In short, a suspect's remedy for the violation of the *Miranda* rule is suppression of the evidence, not a damages action under 42 U.S.C. § 1983. *See Hannon*, 441 F.3d at 637. *See also Brock v. Logan County Sheriff's Dept. of Arkansas*, 3 F.3d 1215, 1217 (8th Cir. 1993) ("The remedy for the alleged *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a civil rights action"); and *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1442 (8th Cir. 1989) (explaining that "[t]he reading of *Miranda* warnings is a procedural safeguard rather than a right arising out of the fifth amendment itself," and that "the remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action"). Therefore, plaintiff has not stated a claim for the purported violation of his *Miranda* rights.

### v.    Failure to Intervene

Under the Fourth Amendment, a police officer may be held liable for failing to intervene to prevent the unconstitutional use of force by another officer. *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009). "To establish a failure to intervene claim, however, the plaintiff must show that the officer observed or had reason to know that excessive force would be or was being used." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015). *See also Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009) (explaining that police officer had duty to intervene to prevent the excessive use of force where the officer was aware of the abuse and the duration of the episode was sufficient to permit an inference of tacit collaboration); and *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) (stating that in Fourth Amendment excessive force context, a police officer may be liable for failing to intervene "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration").

In this case, plaintiff alleges that Officer Rice failed "to prevent the misconduct " of Officer Weber during Weber's "technical assault." As discussed at length above, however, plaintiff has

not demonstrated the use of excessive force – or any other constitutional violation – during his encounter with law enforcement. Because there is no underlying constitutional violation, Officer Rice cannot be said to have failed to intervene to stop one. Therefore, plaintiff has not stated a failure to intervene claim.

### vi.   Slander and Threats

Plaintiff alleges that he was slandered during his encounter with defendants. A 42 U.S.C. § 1983 action cannot be based on a theory of slander, defamation, or libel. *See Paul v. Davis*, 424 U.S. 693, 711-712 (1976) (determining that regardless of seriousness of "defamatory publications," the harm to plaintiff's reputation "did not deprive him of any liberty or property interests protected by the Due Process Clause"); *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (stating that an inmate cannot recover damages for defamation under § 1983 "because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States"); *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) (stating that name calling is not a constitutional violation for purposes of an action pursuant to 42 U.S.C. § 1983); and *Smith v. Iverson*, 2019 WL 4417548, at *11 (D. Neb. 2019) (stating that "[a] § 1983 action cannot be predicated upon the theory of slander, defamation, or libel"). Therefore, plaintiff has failed to state a claim for defamation.

Plaintiff also contends that he was threatened, though he does not specify the nature or content of the supposed threats. "Generally, mere verbal threats made by a state-actor do not constitute a [42 U.S.C.] § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). *See also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983"). In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion

of an identified liberty interest." *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). Therefore, plaintiff has not stated a claim based on the alleged verbal threats he received.

### E.  Civil Conspiracy Under 42 U.S.C. § 1985

Along with his claims under 42 U.S.C. § 1983, plaintiff broadly alleges a civil conspiracy among defendants in violation of 42 U.S.C. § 1985. In order to establish a civil conspiracy under § 1985, a plaintiff must demonstrate "(1) that the defendants conspired, (2) with the intent to deprive him of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that he was injured or deprived of having and exercising any right or privilege of a citizen of the United States." *Mendoza v. United States Immigration & Customs Enf't*, 849 F.3d 408, 421 (8th Cir. 2017).

The first element requires the plaintiff to "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Johnson v. Perdue*, 862 F.3d 712, 717-18 (8th Cir. 2017). *See also Crutcher-Sanchez v. Cty. of Dakota*, 687 F.3d 979, 987 (8th Cir. 2012) ("A conspiracy claim requires evidence of specific facts that show a meeting of the minds among conspirators"). Conjecture and speculation is insufficient to prove the existence of a conspiracy. *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). Furthermore, unless there is a constitutional violation, there is no actionable conspiracy claim. *Robbins v. Becker*, 794 F.3d 988, 997 (8th Cir. 2015).

With regard to the first element of a 42 U.S.C. § 1985 claim, plaintiff has failed to "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." There are no facts suggesting when defendants met, what they discussed, and what agreement they reached. There is no support for any "meeting of the minds," let alone a meeting

22

in which defendants agreed to violate plaintiff's constitutional rights. Instead, the only connection between the police officer defendants and the business defendants comes from an employee of First Community calling the police for assistance. Calling the police for assistance does not constitute an agreement or meeting of the minds.

As to a constitutional violation, the Court has already discussed plaintiff's failure to present any facts establishing the violation of his rights. Without a constitutional violation, there is no actionable conspiracy claim. For all of these reasons, plaintiff has failed to state a claim under 42 U.S.C. § 1985.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 6th  day of  September, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

23